19412

The STATE, Respondent, v. Curtis Ray JORDAN et al., of whom Curtis Ray Jordan is, Appellant.

(188 S. E. (2d) 780)

*Gerald R. Clay, Esq.,* of Abbeville, *for the Appellant,*

*William T. Jones, Esq., Solicitor,* of Greenwood, *for Respondent,*

May 9, 1972.

Moss, Chief Justice:

The record shows that Curtis Ray Jordan, the appellant herein, along with Oscar Eddie Jordan, Jr., were indicted by the Grand Jury of Abbeville County and charged with the crime of armed robbery. Section 16-333 of the Code. Upon arraignment, the appellant and his co-defendant entered a plea of "not guilty". The appellant and his co-defendant, represented by appointed counsel were tried before

the Honorable Francis B. Nicholson, Presiding Judge, and a jury, at the 1971 May Term of the Court of General Sessions for Abbeville County. The jury returned a verdict of guilty and the appellant and his co-defendant were imprisoned for a term of twelve years. The appellant has prosecuted this appeal from the rulings of the trial judge.

It is undisputed that on January 13, 1971, some time after 7:00 P. M., two white men with stockings over their faces, wearing gloves, each being armed with a double barrel shotgun, entered the store of G. O. Hall of Calhoun Falls and robbed him of some $480.00. Following the robbery, they fled on foot from the store.

Immediately following the robbery, officers of the law were called and an investigation ensued. Bloodhounds were brought to the store in the nighttime and turned loose where a track was found in close proximity to the northeast corner of the store. The dogs picked up the trail there and followed it to a point approximately one mile away from the store where certain articles, hereinafter referred to, were found the next day.

There is testimony that the bloodhounds followed a trail from the store to a place where tire tracks were found indicating that an automobile had been driven into the area and turned around and came out. The officers obtained some plaster of paris and poured such into a track at the turnaround spot. The cast was left to dry and was removed the next morning.

Several of the officers testified that on January 14, 1971, the day following the robbery, they returned to the area to which the bloodhounds had trailed and where the cast of the print of an automobile tire was made and conducted a wider and more thorough search. They found two double barrel shotguns, two pairs of gloves, four shells and an Army shirt or jacket.

The Sheriff of Abbeville County testified that on the night of January 13, 1971, that the cast of the tire print

was poured and close to where the car had been parked, according to the tracks on the ground, he found a letter and, upon examination, it contained a stub of a Trailways bus ticket indicating passage from Arcadia, Florida to Atlanta, Georgia.

One of the officers testified that following the robbery and in the course of his investigation, he was checking dirt roads leading away from Highway 72. He stated that he saw a car with lights burning come out into the highway and head west. He described the automobile as being a 1959 white Buick four-door sedan. He said that he saw two people in the car. It was later determined that the car came from the suspect area to which reference has heretofore been made.

Ray Howell, an automobile salesman, testified that on January 11, 1971, he sold a 1959 white Buick four-door sedan to Curtis Jordan. Curtis Jordan and Oscar Eddie Jordan, Jr. came to his used car lot in the State of Georgia together to purchase an automobile and he sold them a 1959 white Buick four-door sedan. The bill of sale was made out in the name of Curtis Jordan and he signed it. He testified that at the time of the sale the aforesaid automobile had a 1970 Georgia tag thereon, the number being 51A412.

Two witnesses for the State testified that on the afternoon of January 13, 1971, about one hour before dark, they saw the appellant and another man, whom they could not identify, at Ward's Landing on a lake about two or three miles from Calhoun Falls. They testified that these two men walked from the lake up a hill to where a white Buick automobile, with Georgia license tag thereon, was parked. As these witnesses drove from the lake they passed the appellant and the other person when they were ten or fifteen yards from the white Buick automobile. One of the witnesses testified that he could identify the appellant because he had known him all of his life.

The State also called a witness who testified that he rode around in Calhoun Falls in a 1959 white Buick automo-

bile with the appellant and his codefendant on Monday and Tuesday before the robbery took place on Wednesday of the same week.

The appellant was arrested in Columbia, South Carolina, and placed in the Richland County Jail. There he was served with a warrant, on January 19, 1971, charging him with armed robbery. At the time of the arrest of the appellant in Columbia, a 1959 white Buick automobile bearing Georgia license number 51A412 was seized and impounded. The right front tire was taken from this automobile. The State offered in evidence the moulage cast made in the suspect area and the right front tire taken from the appellant's car.

The appellant and his co-defendant were brought from the Richland County Jail to Abbeville on January 22, 1971. There is testimony that upon their arrival they were taken directly to the sheriff's office of Abbeville County and were there interrogated by the sheriff. There is contradictory testimony as to whether the interrogation took place before or after the appellant had been arraigned in the office of the clerk and an attorney appointed to defend him.

The appellant charges error on the part of the trial judge in admitting evidence of a statement made by him while in custody, such statement being elicited by custodial interrogation contrary to the principals promulgated in *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, and that its admission violated his privilege against self-incrimination. Prior to the offering in evidence of the statement made by the appellant, the trial judge excused the jury, and in the absence thereof, heard the evidence of both the State and the appellant, upon the question of the admissibility of the statement. This was the correct procedure to follow. *State v. Funchess,* 255 S. C. 385, 179 S. E. (2d) 25.

In the absence of the jury, the sheriff testified, and such was corroborated by another officer who was present, that he

gave the appellant the warnings required by the Miranda decision. The appellant denied that he was given any warnings. The sheriff testified that the appellant said that he did not want an attorney and was not guilty of the robbery committed at Hall's store and could not be guilty of it because he was not in Calhoun Falls on that day. However, the appellant did admit that he left Arcadia, Florida on January 7, 1971, on Trailways Bus to Atlanta, Georgia and arrived in Calhoun Falls on January 8, 1971.

The appellant testifying at this hearing in the absence of the jury, said that the sheriff did not give him the Miranda warnings and that he stated to the sheriff that he wanted a lawyer. He further testified that he was not guilty of the robbery committed at Hall's store. We quote from the appellant's testimony given on cross-examination, the following:

"Q. But you did say freely and voluntarily that you left Arcadia, Florida on the 7th of January on the Trailways bus and you went to Atlanta and arrived at Calhoun Falls on the 8th of January?

"A. Yes, sir, I said it.

"Q. You had no objection to saying that?

"A. No, sir.

"Q. And you did say that freely and voluntarily?

"A. Yes, sir."

We quote further from the appellant's testimony.

"Q. Well, were these men, Mr. Sorrow and the Sheriff, civil, nice, good to you when you had been in their custody?

"A. You mean while I getting questioned, or since I been to the jail?

"Q. Well, while you were getting questioned on the 22nd.

"A. Yes, sir, they talked civil.

"Q. Did he try to force you into anything?

"A. No, sir, he didn't force me into nothing.

"Q. Whatever you did say you said freely and voluntarily?

"A. Yes, sir.

"Q. Of your own free will and accord?
"A. That's right."

Conflicting testimony raised an issue of fact to be determined by the trial judge. He found, beyond a reasonable doubt, that there was a voluntary waiver on the part of the appellant and he voluntarily, willingly and understandingly responded to the questions asked him. We think that the evidence supports the determination by the trial judge that the statement by the appellant was freely and voluntarily given.

The appellant alleges that the trial judge committed error in permitting the introduction into evidence of certain articles found approximately one mile from the scene of the crime. The appellant asserts that these articles were never connected with him nor with the crime.

Admittedly, the two men who robbed Hall's store were each armed with a double barrel shotgun and were wearing gloves. Footprints or tracks were found in close proximity to one corner of the store. Bloodhounds were immediately brought to the scene of the robbery and they picked up the trail where the footprints were found and followed it to a point approximately one mile from the store. The trail ended where an automobile had been driven into the area and turned around. The articles introduced in evidence were found within a few yards of where an automobile had turned around and included two double barrel shotguns, two pairs of gloves and a Trailways bus travel ticket. The 1959 white Buick automobile, with Georgia license plates thereon, was seen parked in the suspect area and the appellant and another man were in close proximity thereto.

The appellant concedes that the action of bloodhounds which were placed on the supposed track of the offender is admissible as evidence provided that the dogs are allowed to follow their instincts free and untrampled by their handlers. *State v. Brown,* 103 S. C. 437, 88 S. E. 21. However, the appellant takes the position that the

bloodhounds did not strike a trail at the scene of the crime, but were placed on a trail or footprint in an area near the corner of the store building. The appellant asserts that there was no testimony to place the appellant where the footprint was found and the trail began. Here, the bloodhounds were put on a trail at a point where the evidence tended to show that the person or persons who had robbed the Hall store had been. Since the appellant did not object to the admission of the bloodhound evidence, he is not in a position to raise any question as to its competency.

It is our conclusion that the trial judge did not err in allowing the exhibits, to which objection was made, to be introduced into evidence as such tended to connect the appellant with the commission of the crime with which he was charged. The sufficiency of the evidence was, of course, a question for the jury but such did have probative value upon the issue they had to decide.

The appellant contends that the trial judge erred in allowing the bus ticket, dated February 7, 1971, to be introduced into evidence.

The sheriff testified that the ticket offered in evidence was found by him in the suspect area on the night of January 13, 1971. When this ticket was offered for introduction into evidence, the appellant objected to such "on the ground that it has been available for any number of people to tamper with" and "it has not been in any way connected with either of these defendants."

The appellant now undertakes to argue that the bus ticket was erroneously allowed to be introduced, on a ground not interposed as an objection upon the trial of the case. We have held that where testimony is received under objection, an appellant in this Court must rely upon the specific grounds of objection assigned on the trial. *State v. Owens,* 124 S. C. 220, 117 S. E. 536. It is apparent that under the established rules of appellate practice the question sought to be raised by the appellant is not properly before this Court.

The appellant contends that the court erred in allowing the introduction into evidence of a moulage cast of an automobile tire imprint found in the suspect area.

The sheriff testified that he made a cast of a tire imprint found in the suspect area. Thereafter, he was permitted to testify that this cast matched and was identical with a tire which was found on the right front wheel of the 1959 white Buick automobile owned by the appellant. The attorney for the appellant, at this point, stated "I would like first that the officer be qualified before his opinion is heard as an expert, or what ever he is going to qualify as." In response to the request of counsel for the appellant, the sheriff tesified that he had been an officer for some thirty years and during that period of time had made many casts and then compared such with objects that might have made the imprint in the ground. Thereafter, counsel for the appellant cross-examined the sheriff without reserving any possible objection that he had to his testimony. We have held that where testimony has been admitted in evidence over objection and counsel cross-examines the witness thereafter without reserving his objection previously made, such objection is thereby lost and if any error had been committed in the admission of the testimony it was cured. *State v. Motley,* 251 S. C. 568, 164 S. E. (2d) 569.

All of the exceptions of the appellant are found to be without merit and the judgment of the lower court is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.